# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| **LORETTA DAVIDSON,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 3:06-CV-45** |
| ) | **(Phillips)** |
| **LOCKHEED MARTIN ENERGY SYSTEMS, INC.,** ) | |
| **And WACKENHUT SERVICES, INC.,** ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff Loretta Davidson has sued her former employers, Lockheed Martin Energy Systems, Inc., and its successor Wackenhut Services, Inc., alleging she was wrongfully discharged because of her race and that during her employment she was subjected to unequal terms and conditions of employment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.,* and 42 U.S.C. § 1981. Defendant Wackenhut Services, Inc., has moved for summary judgment asserting that there are no genuine issues as to material facts, and that Wackenhut is entitled to judgment as a matter of law on all of plaintiff's claims. Because plaintiff has failed to make a *prima facie* showing that her termination was racially motivated, and because the defendant has articulated a legitimate, nondiscriminatory reason for her termination and plaintiff has not shown the stated reason to be pretext, defendant

Wackenhut's motion for summary judgment will be granted, and this action will be dismissed.[1]

## **Factual Background**

This case involves the Y-12 Plant in Oak Ridge, Tennessee. Effective January 10, 2000, DOE selected WSI to replace LMES as the security and related support services contractor for four DOE facilities in Oak Ridge. These four DOE facilities house classified materials pertaining to national security, secret scientific research, and the development of nuclear weapons. The Y-12 Plant maintains the nation's stockpile of weapons-grade uranium. Improper access into any one of these Oak Ridge facilities threatens national security, could benefit foreign governments or terrorist groups, and jeopardizes the safety of the nation's military and civilian populations. Thus, the security of the Y-12 Plant is vital to national security.

The work performed by security guards at Y-12, Security Police Officers (SPOs) and Security Officers (SOs) as they are officially called, is subject to extensive DOE regulations that apply to protective force personnel at government-owned facilities like Y-12. *See* 10 C.F.R. Part 1046. These regulations require SPOs to meet certain physical fitness and other requirements, at specified intervals, to maintain their status. DOE regulation 10 C.F.R. § 1046.14 expressly requires all protective force personnel to have a

---

[1] Davidson has previously dismissed with prejudice all claims she has asserted against defendants Lockheed Martin Energy Systems, Inc. and The Wackenhut Corporation, leaving only her claims against defendant Wackenhut Services, Inc.

"current access authorization for the highest level of classified matter to which they potentially have access." WSI required its SOs and SPOs to obtain and maintain a Q-Clearance as a condition of their employment.

In 1978 Davidson was hired by Union Carbide Corporation. From 1978 until her termination in September 2000, she worked as a security guard at the Y-12 Plant, first for Union Carbide (1978-1984), next for LMES (1984-2000), and finally for WSI (2000). Davidson was employed by WSI only from February 15, 2000 until September 29, 2000, when WSI terminated her employment because her security clearance was terminated by DOE. Throughout her employment with WSI, Davidson worked at Y-12 as either an SPO (armed guard) or SO (unarmed guard).

Davidson understood she "had to have a clearance" in order to work as a guard at Y-12. WSI's employment offer letter informed Davidson that her employment with the company was contingent on "obtaining and maintaining of all . . . clearances for the position." DOE has exclusive authority to grant, suspend and terminate security clearances. Davidson held a Q-Clearance until it was terminated by DOE in September 2000.

DOE periodically reviews security clearances to determine whether to continue an individual's clearance in effect or, if not, whether to suspend or terminate it. The problems that led to the termination of Davidson's Q-Clearance arose during one of

these reviews. In reviewing Davidson's clearance, DOE required her to provide certain financial information and informed her by letter dated August 24, 2000 that her "failure to submit the requested documentation may result in the termination of [her Q-Clearance]." When Davidson did not provide the required information, DOE "administratively terminated" her Q-Clearance, and so notified her by letter dated September 27, 2000. DOE took this action under 10 C.F.R. § 710.6(a) which provides that when an individual fails to produce requested information, "any access authorization then in effect may be terminated . . . ."

By letter dated September 27, 2000, DOE notified WSI that it had administratively terminated Davidson's clearance. It is WSI's policy and practice at Y-12 to terminate the employment of any employee whose security clearance has been revoked or terminated by DOE. The termination of the employee is not delayed pending any appeal the employee may elect to take from DOE's action. The policy and practice of forthwith terminating an employee whose clearance has been terminated was also consistently followed by the previous government contractors at Y-12: LMES, Martin Marietta Energy Systems (MMES), and Union Carbide Corporation. From August 1989 to April 1999, fifty-four employees at the Y-12 Plant had their security clearance terminated and in each instance, LMES/MMES forthwith terminated the employee upon being notified of the termination by DOE.

Upon receiving notification from DOE that Davidson's Q-Clearance had been terminated, WSI called DOE to make sure it understood the letter correctly. DOE confirmed

that it had intentionally used the word <u>termination</u> as opposed to suspension.  Under WSI's policy, when DOE notifies WSI that an employee's clearance has been terminated, WSI proceeds at once to terminate the employee.  WSI informed Davidson orally and by letter dated October 2, 2000, that her employment was being terminated effective September 29, 2000.

Davidson appealed the decision of DOE's Oak Ridge office to the Director of DOE's Office of Safeguards and Security.  After examining the record, the Office of Safeguards and Security affirmed the action taken by the Oak Ridge office and so informed Davidson by letter of November 13, 2000.

Under the federal regulations, DOE may either suspend or terminate an employee's security clearance.  Under the practice followed by WSI at Y-12, there is an important difference between the <u>termination</u> of a clearance and the <u>suspension</u> of a clearance.  If an individual's clearance is <u>suspended</u>, WSI continues to employ the individual but assigns the individual to a position not requiring a clearance pending DOE's decision whether to reinstate or to terminate the individual's clearance.  If the individual's <u>suspended</u> clearance is later reinstated, the individual's employment is continued.  But if the individual's clearance is <u>terminated</u>, the individual's employment is terminated.

It is Davidson's contention that WSI terminated her in retaliation after she complained to WSI about a statement made to her by supervisor Bobby Beaty in June 2000

involving WSI's dress code. WSI has a dress code applicable to protective force personnel. Regarding female employees the policy states that "when worn in a braid, the hair shall not extend more than 6 inches below the back yolk [collar]." Commander Beaty told Davidson that she was "out of compliance," referring to her hair, which she was wearing in braids or "corn rows," and told Davidson that she needed to put her hair up. Davidson responded, "No, I'm not," and told Beaty that wearing her hair in that style was part of "my culture." Beaty answered, "I don't give a damn about [your] culture," at which point the conversation ended.

Using WSI's internal concern procedure, Davidson immediately reported the incident to Gary Brandon, Manager of Protective Services at Y-12, who told her an investigation would be conducted. The next day, Davidson signed a written complaint. In the meantime, Beaty reported to Site Commander, P.C. Tarrant that Davidson' hair was not in compliance with the dress code. Tarrant spoke with Davidson and told her to secure her hair so it complied with the dress code. Tarrant prepared a written report about the incident and sent it to Operations Manager Gary Brandon.

Rose Weaver, WSI's Diversity Coordinator, conducted the investigation of Davidson's complaint against Beaty. Based on Weaver's investigation, WSI concluded that Beaty's conduct was unprofessional, that his remark to Davidson was inappropriate, and that his conduct could not be condoned. As a result, Beaty was verbally counseled by his supervisor, Steve Gibbs, WSI's Director of Protective Force Operations, and was instructed

on WSI's harassment policy and required to attend a cultural diversity training program. By letter dated July 6, 2000, Weaver informed Davidson of the conclusions WSI had reached and of what the company had done. Davidson stated that she had no further problems with Beaty after he had been disciplined.

Following her termination, Davidson filed a charge of discrimination with the EEOC. The EEOC issued her a right to sue letter and Davidson filed the instant action on December 28, 2001. In her complaint, Davidson alleges that WSI engaged in a "systemic practice and pattern of racial discrimination, involving "subjective selection, discipline, and termination policies, practices and procedures, and unequal terms and conditions of employment . . . " in consequence of which she claimed to have been prevented from "advancing into better and higher paying positions for which she was qualified . . . ." Davidson further alleges that she was subjected to a racially hostile working environment, and experienced and witnessed African-American employees not being given equal opportunities for promotion and advancement and being discriminated against with respect to job assignments and other terms and conditions of employment.

Davidson's principal claim against WSI is her termination/retaliation claim. She alleges that soon after she complained to WSI about a statement made to her by supervisor Bobby Beaty in June 2000, her security clearance was "suspended" by DOE and her employment terminated by WSI "due to that suspension [sic]." Claiming disparate treatment, she alleges that other white guards were not immediately terminated after

having their clearances suspended and that many white security guards were hired without first having a security clearance. She further alleges that although Wackenhut's sole reason for terminating her was due to the loss of her security clearance, Wackenhut refused to request that her security clearance be reinstated.

WSI has moved for summary judgment asserting that (1) the undisputed evidence fails to support Davidson's claim for wrongful termination, and (2) there is no evidence of a causal connection between Davidson's complaint about Beaty and the termination of her employment. Therefore, WSI asserts that it is entitled to judgment as a matter of law on plaintiff's claims.

Plaintiff Davidson has responded in opposition, stating that the evidence in this case demonstrates that she was terminated on account of her race while white employees were treated more favorably, and that she was terminated in retaliation for making a complaint of racial discrimination against a white supervisor.

### Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court views the evidence, all facts, and any inferences that may be drawn

from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## Analysis

In her response to WSI's motion for summary judgment, Davidson states that she is not pursuing any claims against WSI other than those arising out of and related to her termination by WSI as well as WSI's failure to assist her to obtain a reinstatement of her security clearance. Accordingly, WSI will be granted summary judgment as to Davidson's claims for discriminatory treatment in promotions and hostile work environment. The court will next address her remaining claims for wrongful termination and retaliation.

### Davidson's Termination Claim

WSI seeks summary judgment as to Davidson's termination claim on the ground that it fails to state a claim on which relief may be granted. DOE regulation, 10 C.F.R. § 1046.14, provides that "protective force personnel shall possess current access

authorization (i.e., security clearance]." WSI's contract with DOE requires it to provide "fully qualified, cleared personnel (armed and unarmed)." All security guards at Y-12 must obtain and maintain a security clearance as a condition of their employment. WSI terminates the employment of any security guard whose security clearance is revoked or terminated by DOE. WSI asserts it terminated Davidson's employment solely because DOE terminated her security clearance, and that it is not unlawful for an employer to terminate such an employee because that employee's security clearance has been terminated.

Davidson has alleged that her termination was not justified and in fact was motivated by racial discrimination. An employee may prove discrimination in two ways. The first is by putting forward direct evidence that the defendant had a discriminatory motive in carrying out its employment decision. *See Robinson v. Runyon,* 149 F.3d 507, 512-14 (6th Cir. 1998). Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999). Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow the factfinder to draw a reasonable inference that discrimination occurred. *Kline,* 128 F.3d at 348.

Under the circumstantial or indirect evidence method, the employee must first establish a *prima facie* case of discrimination. *Monette v. Electronic Data Sys., Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996). In order to establish a *prima facie* case for discriminatory

termination, Davidson must show that (1) she was a member of a protected class, (2) she was qualified for the position and did it satisfactorily, (3) despite her qualifications and performance, she was discharged, and (4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside her protected class. *Noble v. Brinker International, Inc.,* 391 F.3d 715, 728 (6th Cir. 2004).

Once the employee successfully makes out a *prima facie* case, a mandatory presumption of discrimination is created and the burden shifts to the employer to proffer a non-discriminatory reason for discharging the employee. *Monette,* 90 F.3d at 1186. If the employer is able to sustain its burden, then the mandatory presumption evaporates into a permissive inference, and the burden shifts back to the employee to show that the employer's proffered reason for discharge was actually a pretext intended to hide unlawful discrimination. *Id.* While the burden of production shifts back and forth between the parties under the *McDonnell Douglas* framework, the ultimate burden of proving that the employer discriminated against the employee on account of his race remains at all times with the employee. *Id.*

An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee. *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 883 (6th Cir. 1996). In challenging an employer's action, an employee "must

demonstrate that the employer's reasons are not true." *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998).

Davidson, as an African-American, belongs to a protected class, and with respect to her termination, she suffered an adverse employment action.  However, she cannot establish that she was qualified for her position, or that she was treated less favorably than a similarly situated individual outside the protected class.  Davidson has not shown that she was qualified for the position of SPO or SO because she failed to meet a fundamental, objective prerequisite.  When she was hired by WSI, she was told in writing that she must maintain a security clearance in accordance with DOE regulations.  10 C.F.R. § 1046.14 The Sixth Circuit and other federal courts have uniformly held that the denial of a security clearance renders the plaintiff unqualified for the job within the meaning of the *prima facie* case.  *See Strong v. Orkand Corp.,* 83 Fed.Appx. 751, 753 (6th Cir. 2003); *Tenenbaum v. Caldera,* 45 Fed.Appx. 416 (6th cir. 2002); *Ryan v. Reno,* 168 F.3d 520 (D.C.Cir. 1999); *Becerra v. Dalton,* 94 F.3d 145 (4th Cir. 1996); *Perez v. FBI,* 71 F.3d 513 (5th Cir. 1995); *Brazil v. Dept. of Navy,* 66 F.3d 193 (9th Cir. 1995); *Bowers v. Lockheed Martin Energy Sys., Inc.,* 3:95-cv-203 (E.D.Tenn. 1995); *Guillot v. Garrett*, 970 F.2d 1320 (4th Cir. 1992); *Lovelace v. Stone,* 814 F.Supp. 558 (E.D.Ky. 1992).

Davidson argues that holding a security clearance, in and of itself, does not render a person either qualified or unqualified for a security officer position at Y-12. Davidson points to WSI's policy of reassigning employees who temporarily lost clearance

as evidence that maintenance of a security clearance at all times is not a requirement of the job. Davidson also points out that new hires worked at Y-12 without a security clearance while awaiting their clearances from DOE. Davidson argues that WSI could have employed her in a temporary position that did not require clearance, just as it had for numerous other individuals who had either not yet obtained clearance or who had lost their clearances.

Davidson cannot show that she was treated differently than similarly situated individuals not in her protected class. To show that she was treated differently from similarly situated white peers for the same or similar conduct, Davidson must show that "all relevant aspects" of her employment situation were "nearly identical" to those of the allegedly similarly situated white employees. *Humenny v. Genex Corp.,* 390 F.3d 901, 906 (6th Cir. 2004) (*quoting Ensley-Gaines v. Runyon,* 100 F.3d 1220, 1224 (6th Cir. 1996). To be deemed "similarly situated," the individuals with whom Davidson compares herself "must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id., quoting Gray v. Tobisha Am. Consumer Products, Inc.,* 263 F.3d 595, 599 (6th Cir. 2001); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). It is Davidson's burden to establish that the other employees' acts were of comparable seriousness to her own infraction. *See Warfield v. Lebanon Correctional Inst.,* 181 F. 3d 723, 730 (6th Cir. 1999).

Davidson contends that similarly situated white employees were treated more favorably. G.D. Arthur is one such employee. Davidson states that Arthur remained employed by WSI for nine months after losing his security clearance due to two DUI arrests, and that when terminated by WSI, he was given 14 weeks severance pay. No such benefit was given to Davidson upon her termination. Additionally, white employee Calvin Key lost his security clearance for more than a year due to DUI charges. Unlike Davidson, he was not terminated by WSI. Last, Davidson alleges that comparators Brent Davis and Leotis Dixon had their security clearances administratively terminated, but WSI specifically took action to seek reinstatement.

The record shows that Arthur and Davidson are not similarly situated in all relevant respects because Arthur's clearance, unlike Davidson's, had been suspended, not terminated. In fact, Arthur's clearance was already suspended (for medical reasons) at the time WSI began work in Oak Ridge. WSI later terminated his employment after he failed to meet DOE's physical fitness requirements. As to WSI's payment of 14 weeks severance pay to Arthur, the Collective Bargaining Agreement (CBA) between the union and WSI provided for "layoff allowance pay" when an employee was terminated on account of medical reasons. The payment of severance benefits to Arthur was required by the CBA. Davidson was not terminated for medical reasons and thus, not entitled to the same severance benefits.

Nor are Calvin Key and Davidson similarly situated. DOE suspended Key's clearance but later reinstated it. DOE never terminated Key's clearance. Once DOE reinstated Key's clearance, Key was reassigned to his former job in accordance with WSI policy.

As to Brent Davis, he is not a "white employee" as Davidson contends – he is an African-American. Moreover, WSI did not request DOE to reinstate the Davis' clearance. The record shows that DOE administratively terminated Davis' clearance on November 29, 2000, after which WSI immediately terminated his employment on December 1, 2000. Davis called a DOE representative on December 4, 2000 and informed him that DOE had made a mistake because he had provided DOE with all the requested information. After receiving Davis' call, DOE further reviewed its files, and concluded that Davis was right: He had provided all the requested information and his clearance had been terminated in error. At that point, on December 6, 2000, DOE notified WSI of the error and requested WSI to submit certain paperwork so that Davis' clearance could be reinstated and his employment restored. After receiving this call from DOE, WSI reinstated Davis' employment, and, as requested by DOE, submitted the paperwork the agency asked for. DOE then reinstated Davis' clearance. Nothing WSI did or failed to do produced this result. The record establishes that it was simply a matter of DOE discovering its own error and then correcting it.

Davidson's argument regarding Leotis Dixon is equally without support. Davidson claims that DOE informed WSI in June 2002 that it had administratively terminated Dixon's clearance, but that WSI did not discharge Dixon until six months later, in December 2002. Davidson also claims that WSI advocated for the reinstatement of Dixon's clearance and prepared an affidavit for that purpose. However, there is no evidence in the record to support any of these contentions. The record does show that WSI hired Dixon on condition that he obtain and maintain a security clearance. It terminated Dixon's employment as soon as it learned that DOE had refused to grant him a clearance. Davidson is correct that the DOE memorandum refusing to grant Dixon a clearance is dated June 13, 2002, but WSI did not receive the memorandum until December 17, 2002. Upon receipt of the DOE memorandum, WSI immediately terminated Dixon's employment. Regarding the affidavit which Davidson assumed was prepared by WSI, the record instead shows that it was prepared either by Dixon or by someone retained to act on his behalf.

In every instance the employee Davidson cites in support of her contentions was either a newly hired employee temporarily working in a job not requiring a clearance while awaiting the initial grant of a clearance or an employee whose clearance had been suspended. None are similarly situated with Davidson, whose clearance was terminated. She cites no employee whom WSI retained after his/her clearance was terminated. The evidence plainly establishes that WSI did not treat these employees differently or better than it treated Davidson.

Davidson also argues that WSI hired a number of employees who did not have clearances. There is a difference, however, between newly hired employees who are waiting on their clearances to be approved and an employee whose clearance has been terminated. WSI, like LMES before it, has consistently terminated employees when it received word that DOE terminated the employee's clearance. Because Davidson has presented no evidence to prove she was treated differently, she cannot establish the fourth element of her *prima facie* case.

Even if Davidson could establish a *prima facie* case, her termination claim would still merit dismissal because she cannot establish that WSI's stated reason for her termination, the termination of her security clearance, is a pretext for discrimination. Davidson argues the termination had no basis in fact because DOE merely <u>suspended</u> her clearance. This argument fails because the record shows that her clearance was <u>terminated</u> by DOE. She cannot refute the fact that DOE informed WSI that DOE had administratively <u>terminated</u> her clearance. WSI had no role in the termination of Davidson's clearance, so WSI could not have discriminated against her by relying on DOE's decision. Title VII, 42 U.S.C. § 2000e-2(g) provides that it is not an "unlawful employment practice" under Title VII for an employer to terminate an employee who fails to maintain a security clearance when a clearance is a required condition of her employment.

DOE terminated Davidson's clearance because she failed to produce her own financial records that DOE had requested. Producing the records DOE requested was

something only Davidson could do.  The obligation to cooperate rested on her alone.  WSI bore no responsibility for Davidson's failure to cooperate with DOE.  It could not cooperate for her.  Moreover, WSI had nothing to do with the termination of Davidson's security clearance.  The process that resulted in her clearance termination involved only DOE and Davidson, and the decision to terminate her clearance was DOE's alone.  DOE did not terminate Davidson's clearance because of anything WSI did or did not do.

Unless Congress has expressly authorized judicial review, this court has no jurisdiction to review any clearance decision no matter what the underlying cause of action. In *Tenenbaum v. Caldera,* 45 Fed.Appx. 416 (6th Cir. 2002), the Sixth Circuit explained, "the merits of an executive branch decision to deny security clearance generally are not reviewable."  *Id.* at 417-18; *See also, Dept. Of the Navy v. Egan,* 484 U.S. 518 (1988)*; Bennett v. Chertoff,* 425 F.3d 999, 1003 (D.C.Cir. 2005); *Guillot v. Garrett,* 970 F.2d 1320, 1325 (4th Cir. 1992).

Davidson attempts to shift the blame for her loss of a clearance by contending that WSI should have asked DOE to reinstate her clearance.  Davidson's premise, that her clearance would have been reinstated if only WSI had requested it, is not supported by the record.  Only a few months after her termination, Davidson applied to work for Temp Systems in a job that required her to have a valid clearance.  When Temp Systems asked DOE to reinstate Davidson's clearance, DOE refused, again, because Davidson failed to cooperate and produce the records requested by DOE.  Davidson has not had a security

clearance since it was terminated on September 28, 2000. These facts conclusively contradict Davidson's contention that DOE would have reinstated her clearance if only WSI had requested it. Based on the record, Davidson cannot establish a *prima facie* case of discrimination. In addition, Davidson cannot establish that WSI's stated reason for her termination – DOE's termination of her clearance – is a pretext for unlawful discrimination. Davidson has produced no evidence that her race was considered or played any part in WSI's decision to terminate her due to the termination of her security clearance.

In summary, Davidson cannot present a *prima facie* case of race discrimination within the meaning of Title VII. WSI's affidavits and exhibits establish that she was not qualified for the position from which she was terminated. Davidson was hired contingent upon her ability to obtain and <u>maintain</u> a security clearance from DOE, and was specifically advised that the maintenance of a favorable security clearance is a requirement of employment with WSI. The termination of Davidson's security clearance by DOE rendered her unqualified for the job. Although Davidson would have been eligible for rehire if she reversed the clearance termination, her appeal to DOE was unsuccessful. Davidson has also failed to establish that the individuals she named as comparable were, in fact, treated differently in the manner of action taken. Davidson has also failed to establish by affidavits or evidence of any kind that for the same or similar conduct, she was treated differently than similarly-situated non-minority employees. WSI has articulated a legitimate, nondiscriminatory reason for its decision to terminate Davidson's employment, and Davidson has completely failed to present any evidence discrediting that explanation.

Thus, summary judgment will be granted to WSI on Davidson's race claim for wrongful termination.

Davidson's Retaliation Claim

Davidson also alleges that WSI terminated her in retaliation after she complained to WSI about racially discriminatory remarks by supervisor Bobby Beaty. To establish a *prima facie* case of retaliation, Davidson must show: (1) that she engaged in protected activity; (2) that WSI knew of this exercise of her protected rights; (3) that WSI consequently took an employment action adverse to her; and (4) that there was a causal connection between the protected activity and the adverse employment action. *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir. 1997). If Davidson establishes a *prima facie* case of retaliation, WSI may rebut the presumption of retaliation by asserting a legitimate, nondiscriminatory reason for its actions. *Morris v. Oldham Co. Fiscal Court,* 201 F.3d 784, 793 (6th Cir. 2000). Davidson must then show by a preponderance of the evidence that WSI's proffered reason for the employment action is pretextual. *Id.* Davidson must produce sufficient evidence from which the jury could "reasonably reject" WSI's explanation and infer that WSI "intentionally discriminated" against her. *Woythal v. Tex-Tenn Corp.,* 112 F.3d 243, 246-47 (6th Cir. 1997). Davidson must submit evidence demonstrating that WSI did not "honestly believe" in the proffered nondiscriminatory reason for its adverse employment action. *Braithwaite v. Timken Co.,* 258 F.3d 488, 494 (6th Cir. 2001). To inquire into WSI's "honest belief," the court looks to whether the employer can establish "reasonable reliance" on the particularized facts that were before the employer

when the decision was made.  *Smith v. Chrysler,* 155 F.3d 799, 807 (6th Cir. 1998).  The

key inquiry is "whether the employer made a reasonably informed and considered decision

before taking an adverse employment action."  *Balmer v. HCA, Inc.,* 423 F.3d 606, 614 (6th

Cir. 2005.

               For purposes of summary judgment, the court will assume that Davidson

engaged in protected activity under Title VII.  However, as discussed above, she cannot

establish the fourth element of a *prima facie* case and cannot establish that WSI's stated

reason for her termination was a pretext for unlawful retaliation.  Davidson argues that only

a little over three months lapsed between her complaint that Beaty made racially derogatory

comments to her and her termination by WSI.  Davidson contends that the short time frame

between her complaints of discrimination and her termination, coupled with WSI's more

favorable treatment of Brent Davis and Leotis Dixon establish a causal connection, or at

least show that material issues of fact are in dispute which preclude summary judgment.

               It takes more than proximity in time to establish a *prima facie* case.  In

*Balmer,* the Sixth Circuit held that "the mere fact that an adverse employment decision

occurs after a charge of discrimination is not, standing alone, sufficient to support a finding

that the adverse employment decision was in retaliation to the discrimination claim.

*Balmer,* 423 F.3d at 615.  Davidson's retaliation claim fails for the same reason her

discrimination claim fails.  She has not come forward with any evidence to dispute WSI's

legitimate, nondiscriminatory reason for her termination.

**Conclusion**

For the reasons stated above, the court finds that defendant Wackenhut Services, Inc. entitled to  judgment as a matter of law on Davidson's claims of discrimination and retaliation under Title VII.  Accordingly, defendant's motion for summary judgment [Doc. 9] will be granted,  and this action will be dismissed.


**ENTER:**


<u>     s/ Thomas W. Phillips     </u>
United States District Judge